406 P.2d 707

Colita **WILLIAMS** and Mae Williams, dependents of Earl Ray Williams, deceased, Plaintiffs,

v.

**INDUSTRIAL COMMISSION** of Utah, Mesa Drillers and Employers Casualty Company, Defendants.

**No. 10273.**

Supreme Court of Utah.

Oct. 25, 1965.

Robert E. Froerer, M. Blaine Peterson, Ogden, for plaintiffs.

Phil L. Hansen, Atty. Gen., State of Utah, Cannon, Duffin & Pace, Lorin N. Pace, Salt Lake City, for defendants.

HENRIOD, Chief Justice.

Review of the Commission's denial of an award. Affirmed.

Applicant's husband worked for Mesa Drillers, a Texas oil driller, which, at the time of the alleged injury was drilling an oil well in S. E. Utah. Williams had worked for three or four weeks. He commuted with several other employees from his home in Cortez, Colorado.

It is asserted that he spent possibly two hours mixing a "mud" compound designed to flush out clogged pipes. Allegedly he did this in a shed. There is conflicting testimony by two of his co-workers that he was ill after mixing the mud, was broken out with a rash and pimples, vomited and coughed on the way home. One of these workers, who said he kicked down the walls of the shed to release Williams, had been married to Mrs. Williams before she married the deceased. The work records, signed by the employees, indicated that the other co-worker did not work on July 3d, although he testified that he did. The day after the alleged injury was a holiday and there is a conflict in the evidence between testimony and the work record as to whether the deceased worked on the 4th, the work record indicating that he did. Everyone said he worked on the 5th but did not feel well.

After he returned home that evening he was taken to a reputable doctor in Cortez, who said Williams walked into the hospital, complained of aches and pains in his chest, with breathing difficulty. He said he hadn't felt well for a couple of days but became ill that day at work, which he attributed to

the altitude and heat. He was admitted to the hospital as a sick man, and although the doctor said he could not remember of anything said about inhalation of anything at work as a cause of the illness, he was put under oxygen, given cough medicine and penicillin. He had a normal pulse and a restful night. The next day he had a temperature, which later left, and the following day he was normal. The next day he was discharged, feeling much better. A day or so later he saw the doctor again, who told him he could go home to Texas, but suggested that he take it easy. The doctor said he couldn't give any opinion as to fumes inhaled, but that "It would be obvious to me that Mr. Williams underwent the usual course and evolution of a bacterial lung infection." He said also that he could see no connection between poisoning and the cause of death. There was nothing in the doctor's statement to the effect that the deceased had a rash or pimples or vomited, nor was there anything in the hospital records or the nurse's log to indicate that he had any such condition.

In driving to Texas the next day, Williams became ill again, saw another doctor, was given a prescription, and the following day consulted another doctor who put him in a hospital, where thirty minutes later he died. The doctor stated the cause of death was a coronary occlusion. In a letter from the doctor to applicant's attorneys he said Williams had a severe pain in the chest radiating down the left arm, and had shortness of breath. The doctor concluded that "the history I obtained was typical of a coronary occlusion." Nothing in the history reported by the doctor to these attorneys made any mention of any complaint of injury arising out of inhalation of fumes, nor of any evidence of rash or pimples.

It is asserted that the injury occurred July 3, 1957. Williams' employer, Mesa Drillers, eleven days later, on July 14, 1957, filed an "Employer's First Report of Injury" with the Industrial Accident Board of Texas, stating "No accident was ever reported. Mr. R. Williams got sick on the way to work and I understand he had pneumonia." A further notation stated "For record only." No claim was ever filed with that Board.

The applicant herein, Mrs. Williams, did not file any claim with the Texas Board. She filed none with the Utah Industrial Commission until December 12, 1958, over seventeen months after the injury is supposed to have occurred. No point has been made as to time limitation for filing such claim, but we point out the delay in filing as something the Commission might consider in connection with credibility of testimony presented, particularly with respect to accuracy of recollection, witness interest, etc. It is interesting to note the specificity of Williams' two co-workers, after five years, was completely discounted by the man

who employed Williams, who, after seven years, at a hearing on petition for rehearing, said Williams had stated that he had the flu, was taking pills, never complained of anything on the job that made him ill; that everyone on the job mixed "mud;" that it was in an open shed, with an open door; and that over many years working in the oil fields, he never heard of a case where one got sick mixing mud.

■ It is true that the Commission presented this case to a medical panel of eminent physicians, which panel presented its report, part of which agreed with the Cortez doctor's diagnosis of pneumonitis, but disagreed as to the possible cause of death. Three "probable" causes were advanced by the panel, frankly based on an unsigned, carbon copy statement prepared by an unknown author whose expertise was unknown, but forwarded by applicant's attorneys, whose expertise was unknown, stating in detail what happened and the medical consequences thereof, without mentioning anyone who was present or anything else. The panel cannot be criticized for assuming that this illegitimate, unsigned carbon copy, signed by no one and directed to no one, *might* be true. It was justified in assuming everything in the instrument was true, since it was there, in the file and handed to the panel. But this does not mean that the Commission, based on the hypothetics of the panel, had to accept as doctrinaire the most probable of three theories advanced as possibilities by the panel. It would be somewhat of a novelty for Workmens Compensation to require the Commission to accept a favored conjectural conclusion out of three possibles, and thus of necessity disregard all other evidence in a case that took eight years and a lot of expense to decide.

■ Objections by both sides to hearsay admissions have merit, as such objections always do, but in this case we see little prejudiciality, particularly in light of 35–1–88, U.C.A.1953, and in a case like this, where, irrespective of the rules of evidence and said statute, it appears to us that on the facts abstracted above, does not compel a reversal on the ground that the Commission was arbitrary and capricious in entering its order.

McDONOUGH, CROCKETT, WADE, and CALLISTER, JJ., concur.